673 A.2d 959

Cathy S. DOMINECK and Michael Domineck,
her husband, Appellants,

v.

The MERCY HOSPITAL OF PITTSBURGH, The Hospital
Association of Pennsylvania, Appellee.

Superior Court of Pennsylvania.

Argued Nov. 29, 1995.

Filed March 25, 1996.

Philip Fabiano, Pittsburgh, for appellants.

Dorothy Davis, Pittsburgh, for appellee.

Before DEL SOLE, BECK and BROSKY, JJ.

DEL SOLE, Judge:

This is an appeal from an order of the trial court granting Summary Judgment in favor of The Mercy Hospital of Pittsburgh and against Cathy S. Domineck and Michael Domineck. We affirm.

In 1985, Ms. Domineck was admitted to Mercy Hospital with a diagnosis of rectal prolapse and mitral valve prolapse. In June of that year, a Dr. Richard A. Happ performed the Ripstein Proctopexy surgical procedure on Ms. Domineck. In June 1987, the Dominecks filed a medical malpractice claim against Dr. Happ alleging that he was negligent in his care and treatment of Ms. Domineck with respect to the surgical procedure. The Dominecks here allege that, during discovery in the malpractice case, they learned that Dr. Happ failed to maintain malpractice insurance when he performed the surgical procedure on Ms. Domineck.

Appellants initiated this action by filing a Praecipe for Writ of Summons in a civil action against Mercy Hospital. Appellants subsequently filed a Complaint alleging, among other claims, that Appellee owed a duty to Appellants to ensure that physicians afforded staff privileges at the Appellee hospital carried the statutorily mandated liability insurance pursuant to the Health Care Services Malpractice Act. 40 P.S.

§ 1301.101 *et seq.* Appellants averred that Appellee breached that duty when it allowed Richard Happ, M.D., a physician granted staff privileges at Appellee hospital, to perform a surgical procedure on Cathy Domineck when Dr. Happ was without the required professional liability insurance coverage.

Appellee filed Preliminary Objections to Appellants' Complaint in the Nature of a Demurrer based on the lack of a statutory or common law duty on Appellee Hospital to monitor the insurance coverage of its staff physicians. The Honorable Eugene B. Strassburger, III denied the Preliminary Objections without an Opinion. The Appellee then filed an Answer and New Matter to which the Appellants filed a Reply. Appellee then filed a Motion for Summary Judgment and the Motion was initially denied. Upon reconsideration, the Honorable Joan Orie Melvin granted the Motion for Summary Judgment. Appellants filed this appeal.

Appellants argue that the trial court erred in granting the Appellee's Motion for Summary Judgment because it raised the same issues Appellee advanced in its Preliminary Objections which were previously overruled by another judge of the same court. We are cognizant of the general rule cited by Appellants that judges of coordinate jurisdiction sitting in the same court cannot overrule each other's decision. *Okkerse v. Howe*, 521 Pa. 509, 556 A.2d 827 (1989). The purpose of this rule is to promote finality of pre-trial applications so that judicial economy and efficiency can be maintained. *Id.*

In *Salerno v. Philadelphia Newspapers, Inc.*, 377 Pa.Super. 83, 546 A.2d 1168 (1988), we examined a similar issue where one judge denied preliminary objections and a different judge of the same court subsequently granted summary judgment on the same issues. We acknowledged the general rule of coordinate jurisdiction; however, we stated:

> ... the rule is not intended to preclude granting summary judgment following denial of preliminary objections. 'The failure to present a cause of action upon which relief can be granted may be raised at any time. A motion for summary judgment is based not only upon the averments of the

pleadings but may also consider discovery depositions, answers to interrogatories, admissions and affidavits.' We can discern no reason for prohibiting the consideration and granting of a summary judgment if the record as it then stands warrants such action. This is particularly true when the preliminary objections were denied without opinion. Moreover, where, as here, dismissal of the entire complaint on motion for summary judgment is appropriate, preclusion of consideration of the summary judgment motion by application of the rule stated, would have further burdened the parties and the court by requiring them to undergo the time and expense of an unnecessary trial, and thereby thwart the very purpose the rule was intended to serve, i.e. that judicial economy and efficiency be maintained. (Citations omitted.)

*Id.* 377 Pa.Super. at 87–88, 546 A.2d at 1170.

Instantly, when the Preliminary Objections were denied, the judge only had the benefit of Appellants' Complaint and Appellee's Preliminary Objections in the Nature of a Demurrer. The Complaint alleged that Appellee was negligent "in failing to properly and adequately investigate Dr. Happ's credentials" in addition to the claims arising from the Hospital's failure to monitor the physician's insurance coverage. The Preliminary Objections were denied without an opinion. When Appellee filed its Motion for Summary Judgment, second judge had before her for review in addition to the items previously filed, Appellee's Answer and New Matter, Appellants' Reply to New Matter, and Appellee's Summary Judgment Motion. In addition she was aware of the fact that there was no response filed to the Motion for Summary Judgment and the record contained no additional discovery.

■ From the record before us, it is apparent that the claim of hospital liability for failing to investigate the credentials was not developed or advanced. Since the judge who considered the Motion for Summary Judgment had a more extensive and focused record than the one who denied the Preliminary Objections, she did not err by considering the Motion for Summary Judgment.

We now determine whether the grant of Summary Judgment was appropriate in this case. In *Drapeau v. Joy Technologies, Inc.,* 447 Pa.Super. 560, 670 A.2d 165 (1996), we stated:

> When we review the grant of a motion for summary judgment made under Pa.R.C.P. 1035, the appellate court's scope of review is well-settled: summary judgment is properly granted where 'there is no genuine issue as to any material fact and ... the moving party is entitled to a judgment as a matter of law.' Pa.R.C.P. 1035(b). Summary judgment may be granted only where the right is clear and free from doubt. The moving party has the burden of proving that there is no genuine issue of material fact. The record and any inferences therefrom must be viewed in the light most favorable to the nonmoving party, and any doubt must be resolved against the moving party. The trial court will be overturned on the entry of summary judgment only if there has been an error of law or a clear abuse of discretion. (Citations omitted).

*Id.*

■ We are presented with a very narrow issue: Does a hospital have a duty to ensure that its staff physicians maintain professional liability insurance coverage? Appellants alleged that such a duty exists and Appellee breached that duty. Appellee contends that neither the Health Care Service Malpractice Act nor the common law imposes a duty on a hospital to ensure that its staff physicians maintain malpractice insurance; rather, the duty to maintain malpractice insurance is the responsibility of the individual physician. We agree.

We are guided by *Thompson v. Nason Hospital,* 527 Pa. 330, 591 A.2d 703 (1991) in determining whether a cause of action exists in this case. *Thompson* sets forth the duties a hospital owes to its patient, defining the concept of corporate negligence as:

> Corporate negligence is a doctrine under which the hospital is liable if it fails to uphold the proper standard of care owed the patient, which is to ensure the patient's safety and

well-being while at the hospital. This theory of liability creates a nondelegable duty which the hospital owes directly to a patient. Therefore, an injured party does not have to rely on and establish the negligence of a third party.

[These] duties have been classified into four general areas: (1) a duty to use reasonable care in the maintenance of safe and adequate facilities and equipment . . .; (2) a duty to select and retain only competent physicians . . .; (3) a duty to oversee all persons who practice medicine within its walls as to patient care . . .; and (4) a duty to formulate, adopt and enforce adequate rules and policies to ensure quality care for the patients. (Footnote and citations omitted).

*Id.* 527 Pa. at 339, 591 A.2d at 707.

In reviewing the record before us, no claim is made that the failure of Appellee in monitoring the physician's insurance coverage would have led to a determination that the doctor was not competent to practice. For example, had it been established that the insurance coverage was cancelled because of excessive claims or for any reason that would give rise to a question of professional ability, the hospital's duty to the patient would be implicated. Under those circumstances, failure to monitor could be the basis of a claim of corporate negligence since the delivery of safe care is implicated.

Appellee also raises the argument that it would place an unreasonable burden on hospitals to monitor physician's malpractice coverage. We are not so persuaded. In thousands of business and financial transactions carriers issue certificates of insurance to third parties and agree not to cancel coverage without notification to those third parties. Thus, we do not decide this issue on that ground.

In this case, as presented, we do agree with the trial court in concluding that "[a]ny alleged injuries and damages sustained by the Plaintiff Wife were caused by the physician's alleged negligent performance of surgery and subsequent treatment and not his failure to maintain proper professional liability insurance. Such failure may relate to Plaintiff's po-

tential remedy but not to the issue of causation of Plaintiff's alleged harm." (Trial ct. op. dated 9–7–94 at 3–4). In its Motion for Summary Judgment, Appellee averred that there are no genuine issues of material fact and that it is entitled to judgment as a matter of law. Since the record does not contain any genuine issues of material fact, we find that the trial court correctly granted the Motion for Summary Judgment.

Order affirmed.